UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-24008-CIV-MORENO

MARION PARNELL JR.,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS I, II, IV, AND V FOR FAILURE TO STATE A CLAIM

### A. Background

This six-count Complaint alleges the following, all in violation of the Civil Rights Act of 1964: (1) race discrimination, (2) color discrimination, (3) retaliation, (4) disability discrimination (failure to accommodate), (5) general disability discrimination, and (6) disability discrimination (retaliation). The Defendant, the Florida Department of Corrections, filed a Motion to Dismiss Counts I, II, IV, and V of the Complaint.

The first time Plaintiff alleges that he experienced discriminatory treatment was on or about December 18, 2020, when he received a notice from the Office of the Inspector General. [D.E. 16] ¶ 8. The specific allegations against Mr. Parnell were that: (1) he had a personal relationship with one of his recruits (Officer Thomas) and (2) that he solicited or pressured members of Basic Recruit Academy class D14 to participate in "money circles." *Id.* He was also accused of receiving money from recruits for these "money circles." Mr. Parnell denies those allegations. *Id.*

While the investigation was pending, Mr. Parnell was placed on a "no recruit contact" restriction. *Id.* at ¶ 9. He was not allowed to interact with recruits without supervision until March 2021. *Id.* He was required to be under the observation by Ken Tracy, Regional Training Specialist, at all times when interacting with recruits. *Id.* In addition, Mr. Parnell was not provided access to tests/exams to give to recruits to take after certain topics or chapters were covered during training sessions. *Id.* He was required to ask Mr. Tracy to print the exams/tests out for him. *Id.*

In a letter to the Plaintiff dated May 20, 2021, the assigned Inspector General Investigator concluded that the allegations against Plaintiff were "[n]ot [s]ustained"—that there was no evidence Mr. Parnell was engaged in a personal relationship with Officer Thomas and that he did not solicit or pressure members of the class to participate in money circles. *Id.* at ¶ 10.

On August 2, 2021, Mr. Parnell received a Pre-determination Notice, dated July 16, 2021, from Roger Bartlett, Regional Training Manager, notifying him that the Florida Department of Corrections intended to take disciplinary action against him in the form of a demotion. *Id.* at ¶ 14. In this Notice, the Florida Department of Corrections alleged that Mr. Parnell had violated a litany of policies—all of which were related to the initial allegations against him. *Id.* Mr. Parnell believes these allegations were made against him in an effort to prevent him from being promoted. *Id.*

The notice specifically alleged that Mr. Parnell was "instructed not to socialize, associate or form friendships with Academy recruits, including in person and on social media. Nevertheless, multiple times throughout 2020, [he] interacted with Academy recruits through the use of apps and/or text messages." *Id.* at ¶ 16. Further, the letter added, "multiple Academy recruits stated that [he] spoke with the Academy class about joining a money circle." *Id.* Mr. Parnell was informed that the new alleged rule violations were added because he socialized with recruits via a messaging app (GroupMe). *Id.* at ¶ 17.

On August 4, 2021, Mr. Parnell applied for a promotion online to Regional Training Specialist. *Id.* at ¶ 18. Mr. Bartlett informed the Plaintiff that he could not interview for the position due to the pending allegations and proposed disciplinary action. *Id.* On September 1, 2021, Mr. Parnell attended his Pre-Determination Hearing via Zoom. *Id.* at ¶ 19. While awaiting results of the Hearing, the Promotion Board selected Sergeant Necuze for the position. *Id.* at ¶ 20. On October 7, 2021, Mr. Parnell again learned that the Florida Department of Corrections again intended to take disciplinary action against him in the form of a demotion. *Id.* at ¶ 21. Roughly a week later, on October 15, 2021, Mr. Parnell took a leave of absence from work—allegedly because of the emotional harm and suffering he was enduring during this time. *Id.* at ¶ 22.

On November 29, 2021, Mr. Parnell filed an Equal Employment Opportunity Commission Charge of Discrimination, wherein he alleged discrimination on the bases of race, color and harassment. *Id.* at ¶ 23. On January 19, 2022, David Arthmann, Director of Human Resources, sent a letter to Mr. Parnell stating that he had been absent from work since January 14, 2022. *Id.* at ¶ 24. The letter advised him that his Family Medical Leave entitlement was exhausted effective January 13, 2022, and he was not eligible for additional leave benefits. *Id.* The letter further stated that he was expected to return to work no later than February 3, 2022, with a release to "full duty" from Mr. Parnell's physician or "provide medical documentation indicating [he] can no longer perform duties of a Staff Development Training Consultant." *Id.* This letter further stated,

> "Your absences since January 14, 2022, are excessive and have interfered with management's ability to adequately staff the academy. Your absences as of February 3, 2022, will be considered unauthorized leave. Any additional medical notes placing you out of work are no longer approved due to you exhausting all

FMLA entitlements. If you fail to follow these instructions following receipt of this letter, it will be necessary to seek action up to and including your dismissal."

*Id.* On February 1, 2022, Mr. Parnell responded to Mr. Arthmann's letter informing him that he was still under his doctor's care and on medication, and he requested an extension of sick leave under the Americans with Disabilities Act. *Id.* at ¶ 25. In a March 3, 2022, letter, the Florida Department of Corrections advised Mr. Parnell that he was being demoted effective March 18, 2022, from his position as Staff Development Training Coordinator to Correctional Officer with a salary decrease. *Id.* at ¶ 26. The demotion was allegedly due to Mr. Parnell violating various Department regulations. *Id.* Mr. Parnell denies the allegations against him and upon which the demotion was purportedly based.

On March 8, 2022, Mr. Parnell again requested an accommodation: extended leave of absence from work. *Id.* at ¶ 27. He provided a note from his medical provider supporting his request, claiming that he "needs outpatient treatment since he was exhibiting symptoms of an emotional disorder that interferes with day-to-day functioning and cannot alleviate these symptoms on his own." *Id.* The medical provider added that he needed "medication management and follow-up appointments until further notice." *Id.* That month, Mr. Parnell was diagnosed with major depressive disorder, anxiety disorder, and insomnia. *Id.*

On March 23, 2022, Patricia Ann Linn, Human Resource Analyst, responded to Mr. Parnell's request for accommodation, informing him that his request for additional leave was granted through March 10, 2022. *Id.* at ¶ 28. On March 30, 2022, Jason Hoskins, Warden, sent a letter to Mr. Parnell requiring him to complete a "Release of Information" form and return it no later than April 13, 2022. *Id.* at ¶ 29. In response, Mr. Parnell authorized the release of medical information and completed the form on April 11, 2022. *Id.*

On September 9, 2022, the Florida Department of Corrections informed Mr. Parnell that he was terminated due to allegedly violating policies and for "excessive absenteeism." *Id.* at ¶ 30. Mr. Parnell claims that he did not receive a copy of the notice of Defendant's intention to terminate him and his right to appeal the decision until September 9, 2022—though his termination was effective as of August 18, 2022. *Id.* at ¶ 32. He also asserts that the notice of termination he received via email dated August 11, 2022, was not received by him until September 9, 2022. *Id.*

### B. Issue

*Counts I and II – Race and Color Discrimination*

Mr. Parnell asserted claims of race and color discrimination based on his demotion, being denied a promotion, and his eventual termination under Title VII of the Civil Rights Act of 1964. He claims that "[o]ther non-African American sworn correctional officers have not been demoted, threatened with demotion, nor otherwise disciplined after having been cleared of allegations." [D.E. 16] ¶ 34. Further, he alleges that he "was significantly more qualified than the non-African American employee selected for this position." *Id.* at ¶ 35. He applied the same arguments to "non-Black" sworn correctional officers and employees in the context of color discrimination for Count II. *See id.* at ¶¶ 41, 42.

However, the Florida Department of Corrections argues that this case is similar to *Tourville v. Securex, Inc.*, in which Florida's Fourth District Court of Appeal permitted an employer to terminate a disabled employee's employment under the Civil Rights Act, where the employee's hospitalization and illness prevented him from performing physical requirements of his job as an on-site security guard, even with reasonable accommodation. [D.E. 21] ¶ 11; 769 So.2d 491 (Fla. 4th DCA 2000) (emphasis added). Defendant continues that Mr. Parnell is "unable to perform the essential functions if his role as Staff Development Training Coordinator to Correctional Officers

or even the essential functions of a Correctional Officer." *Id.* at ¶ 12. The job "requires employees to operate regularly on 8.5 hour shifts, as well as interact, manage, and train recruits in a professional manner, and interact and manage inmates in custody at their respective holding/detention facilities and aiding in the transportation of those inmates to the court." *Id.*

The Florida Department of Corrections argues that although Counts I and II are based on color—not disability—"a qualified individual under the ADA and the Florida Civil Rights Act must be able to meet all of a program's requirements in spite of his handicap." *Id.* at ¶ 13. Further, in the Defendant's view, "[i]n each position [Mr. Parnell] held or sought to hold, [he] has failed to allege that he is able to perform the essential functions of the job(s)." *Id.* Regarding the "money circles" issue, it is the Department's position that "[r]egardless of his affirmative participation in the money circles or his passive condoning of the money circles, his involvement—however minimal—is both unprofessional and illegal." *Id.* at ¶ 14. Therefore, the Department believes Mr. Parnell is "not qualified to perform the duties of a Staff Development Training Coordinator because he does not embody integrity and his judgment does not lend itself to a position of leadership, training, or teaching on corrections officers." *Id.*

The main issue for the Court to decide on Counts I and II is the framework in which to analyze the claims, which were brought under Title VII of the Civil Rights Act of 1964. Defendant asserts that "[a] claim under the [Florida Civil Rights Act] is analyzed under the same standards as a Title VII claim." [D.E. 29] ¶ 7 (quoting *Tippe v. Spacelabs Medical, Inc.*, 180 F. App'x. 51, 53 n.1 (11th Cir. 2006)). The Department leans on *Leme v. S. Baptist Hosp. of Fla., Inc.*, which stands for the proposition that the minimum elements to bring a claim under the Americans with Disabilities Act require that the plaintiff establish: "(1) he was disabled; (2) he was a qualified individual; and (3) an adverse employment action was taken against him." 248 F. Supp. 3d 1319,

1339 (M.D. Fla. 2017) (internal quotations omitted). However, Mr. Parnell counters that this is not an Americans with Disabilities Act case—but a Title VII case—and that it should, thus, receive a different analytical framework.

*Counts IV and V – Disability Discrimination / Failure to Accommodate*

In Count IV, Mr. Parnell asserts that he is a "qualified individual with a disability and able to perform the essential functions of his position with or without accommodation." [D.E. 16] ¶ 51. He believes he "requested a reasonable accommodation" and that "Defendant failed to engage in the interactive process." *Id.* Further, in his view, the Florida Department of Corrections "ignored and/or ultimately denied [Mr. Parnell's] reasonable accommodation request." *Id.* As a result, Mr. Parnell argues that he "has suffered, is now suffering, and will continue to suffer, emotional pain and mental anguish" and that he "has been, is being and will in the future, be deprived of income in the form of wages and of prospective benefits due to [him] solely because of Defendant's conduct." *Id.* at ¶ 53. In Count V, Mr. Parnell alleges that "[s]ubsequent to [his] notifying Defendant of his disability . . ., he was subjected to discrimination in the form of being denied his requested reasonable accommodations and eventually terminated." *Id.* at ¶ 56.

The Florida Department of Corrections counters that Mr. Parnell is not a "qualified" individual under the Americans with Disabilities Act. [D.E. 21] ¶ 24. As the Department understands, an employer may be liable under the Americans with Disabilities Act for "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." 42 U.S.C.A. § 12112(b)(5)(A). To bring such a claim, the Plaintiff need only establish that "(1) an adverse employment action was taken against him, (2) he was qualified for the job position in question, and (3) different treatment was given to someone who differs in regard to the relevant personal characteristic." *Wright v. Southland Corp.*, 187 F.3d 1287, 1290 (11th Cir.

1999).[1] The Department's argument hinges on the notion that Mr. Parnell is not "qualified" because he failed to meet the burden "of proving that [he] is . . . a person who, with or without reasonable accommodation, can perform the essential functions of [his] job." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (quoting 42 U.S.C. § 12111(8)) (internal quotations omitted).

The issue for the Court to determine as to these two counts is whether Mr. Parnell must *prove* he is a qualified individual with a disability or if his allegations are enough as stated in his pleadings.

### C. Legal Standard

Fed. R. Civ. P. 8(a)(2) establishes that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, Fed. R. Civ. P. 12(b)(6) establishes that a party may assert the defense of "failure to state a claim upon which relief can be granted" via a Motion to Dismiss. Although "detailed factual allegations" are not required, there must be "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. This standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotations omitted).

### D. Legal Analysis

---

[1] The Defendant cited *Leme v. S. Baptist Hosp. of Fla., Inc.*, 248 F. Supp. 3d 1319, 1339 (M.D. Fla. 2017), which enumerates the elements as follows: "(1) he was disabled; AND (2) he was a qualified individual; AND (3) an adverse employment action was taken against him." (internal quotations omitted). However, this Court finds the Eleventh Circuit's articulation more pertinent.

8

*Counts I and II – Race and Color Discrimination*

Counts I and II are Title VII claims—not Americans with Disabilities Act claims. Thus, because Mr. Parnell brought those two counts under Title VII, they should receive the corresponding analytical treatment. A "complainant in a Title VII trial must carry the initial burden under the statue of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). He can do so by showing the following:

> "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

*Id.* The Supreme Court notes that "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *Id.* at n.13. However, the framework is, at the very least, instructive in the instant case.

Mr. Parnell has no issue with the first prong—that he belongs to a racial minority. Per his Complaint, he is African American. [D.E. 16] ¶ 3. The next prong proves more difficult. On the face of the Complaint, it does appear that Mr. Parnell *applied* for the promotion to Regional Training Specialist. *Id.* at ¶ 18. However, he does not *show* that he was qualified for the role. He makes a mere conclusory statement that he "met or exceeded all of the qualifications required for promotion to this position" without saying what those qualifications were. *Id.* The only semblance of a showing of his qualifications occurs when he asserts that Sergeant Necuze—who was hired for the role—is "less qualified than Plaintiff" given that Mr. Parnell had "experience in training

9

while employed with for Defendant."[2] *Id.* at ¶ 20. There is no further elaboration on the matter besides that he is "significantly more qualified than the non-African American employee selected." *Id.* at ¶ 35. The issue with the second prong of the analysis plays into third prong. Without sufficiently demonstrating his qualifications, he cannot sufficiently show that "*despite* his qualifications, he was rejected." As for the fourth prong, the position *did not* remain open—the Promotion Board selected Sergeant Necuze. *Id.*

Even if the *McDonell Douglas* framework is not perfectly applicable here, it does enough work to show the flaws in Mr. Parnell's argument. Simply put, the claim of racial and color discrimination does not have the requisite facial plausibility in this instance. The pleaded factual content does not allow the Court to draw the reasonable inference that the defendant is liable for discrimination on the basis of race or color, as required by *Iqbal*. 556 U.S. at 663. Although the facts may make it *possible* that the Florida Department of Corrections has acted unlawfully, *Iqbal* requires that this Court find more than a "sheer possibility." *Id.* at 678. Mr. Parnell fails to do so. Thus, Counts I and II of his Complaint are dismissed.

*Counts IV and V – Disability Discrimination / Failure to Accommodate*

The Court finds that Mr. Parnell did not make the requisite showing that he is a "qualified" individual. The Eleventh Circuit's three-prong test was designed to make it "easier for plaintiffs in employment discrimination suits" by developing a presumption that the Plaintiff need not "present evidence from which the trier of fact could conclude that the adverse employment action taken against him was caused by improper discrimination." *Wright*, 187 F.3d at 1290. In other words, the test that this Court employs—per the Eleventh Circuit's guidance—is a lower bar. Here, Mr. Parnell encounters a similar issue to that in the first two counts: establishing that he was

---

[2] The Court quotes the grammatical error contained within the Complaint.

qualified for the job in question. The analysis is not subjective; the Court is not weighing Mr. Parnell's qualifications—or in Defendant's view, lack thereof. Rather, the Court is deciding whether Mr. Parnell *established* his qualifications in the first place. In other words, it is not Mr. Parnell's duty to "prove" he is qualified. Rather, he must set out facts that *establish* that he is— whether he genuinely is qualified or not. Here, he did not. As was the case in the first two counts, the only semblance of an established qualification is that the individual who received the job was allegedly "less qualified" than Mr. Parnell and that Mr. Parnell was "significantly more qualified than the non-African American employee selected." *Id.* at ¶ 20, 35. Further, the Department allegedly never accused him of "substandard" work [D.E. 16] ¶ 16. However, that assertion does not establish his qualifications for the job. The elements of Count V are the same elements required in Count IV. Therefore, Mr. Parnell failed to meet his burden, and Counts IV and V are dismissed.

THE COURT has considered the motion, the response, the reply, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion is GRANTED. Counts I, II, IV, and V are DISMISSED.

DONE AND ORDERED in Chambers at Miami, Florida, this ___ of June 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record