UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-24008-CIV-MORENO

MARION PARNELL JR.,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER DENYING ALL PENDING MOTIONS AS MOOT

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment. Marion Parnell Jr. sued his employer, the Florida Department of Corrections, alleging retaliation and disability discrimination retaliation in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. The Court grants summary judgment in favor of Defendant, holding that Mr. Parnell has failed to make a prima facie showing of retaliation. The Court also finds that even if Mr. Parnell had made such a showing, Defendant has offered legitimate, non-discriminatory reasons for his demotion and termination. Finally, the Court determines that Mr. Parnell does not demonstrate that any of those proffered reasons are pretextual.

### I.   Factual Background

Mr. Parnell was employed by Defendant as a Staff Development Training Coordinator and Corrections Officer, responsible for teaching corrections officer recruits at the Everglades and Dade Correctional Institutions ("the academy"). He alleges that the discrimination began in December 2020 when the Florida Department of Corrections Office of the Inspector General began

investigating his improper conduct in the workplace. The allegations against Mr. Parnell were that he solicited or pressured recruits in his academy class to participate in "money circles," or pyramid schemes. He was also accused of receiving money from recruits for these "money circles. Mr. Parnell denies those allegations. While the investigation was pending, Mr. Parnell was placed on a "no recruit contact" restriction. He was not allowed to interact with recruits without supervision until March 2021. He was required to be under the observation of a Regional Training Specialist at all times when interacting with recruits. Mr. Parnell's personnel file did not contain any disciplinary action prior to this investigation and the events that followed.

On May 20, 2021, the investigator found that the allegations against Mr. Parnell regarding money circles were "not sustained," meaning that "[t]he preponderance of evidence d[id] not reasonably establish [Mr. Parnell's] behavior or action either complied with or violated or was contrary to Department procedure, rule, or other authority." D.E. 43 at ¶ 22.

On July 16, 2021, Defendant sent Mr. Parnell a pre-determination letter notifying him that disciplinary action would be taken against him in the form of a demotion due to his alleged violation of several department policies related to the allegations against him in the Office of the Inspector General investigation. The notice specifically alleged that although Mr. Parnell was "instructed not to socialize, associate or form friendships with Academy recruits, including in person and on social media," throughout 2020, "[he] interacted with Academy recruits through the use of apps and/or text messages." D.E. 16 at ¶ 16. The letter further indicated that "multiple Academy recruits stated that [he] spoke with the Academy class about joining a money circle." *Id.* Mr. Parnell was informed that the new alleged rule violations were added because he socialized with recruits via GroupMe, a messaging app.

On September 16, 2021, the Chief of the Office of the Inspector General issued a Supplemental Report sustaining the allegations against Mr. Parnell and concluded that, based on the facts and testimony documented in the investigation, there was sufficient evidence to sustain a finding that Mr. Parnell violated several Florida Department of Corrections rules and policies. Thereafter, Mr. Parnell was notified twice more that he would be demoted due to the allegations that he violated several policies, which were sustained by the Office of the Inspector General.

Mr. Parnell then took medical leave on October 15, 2021, under the Family and Medical Leave Act for alleged mental health conditions caused by the emotional harm and suffering he was enduring at that time. On November 29, 2021, Mr. Parnell filed an Equal Employment Opportunity Commission Charge of Discrimination, wherein he alleged discrimination on the bases of race, color and harassment.

On January 19, 2022, David Arthmann, Director of Human Resources, sent a letter to Mr. Parnell stating that he had been absent from work since January 14, 2022. The letter advised Mr. Parnell that his Family Medical Leave entitlement was exhausted effective January 13, 2022, and he was not eligible for additional leave benefits. The letter further stated that he was expected to either return to work no later than February 3, 2022, with a release to "full duty" from Mr. Parnell's physician or "provide medical documentation indicating [he] can no longer perform duties of a Staff Development Training Consultant." *Id.* at ¶ 24. This letter further stated,

> Your absences since January 14, 2022, are excessive and have interfered with management's ability to adequately staff the academy. Your absences as of February 3, 2022, will be considered unauthorized leave. Any additional medical notes placing you out of work are no longer approved due to you exhausting all

>  FMLA entitlements. If you fail to follow these instructions following receipt of this letter, it will be necessary to seek action up to and including your dismissal.

*Id.*

On February 1, 2022, Mr. Parnell responded to Mr. Arthmann's letter, informing him that he was still under his doctor's care and on medication and requested an extension of sick leave under the Americans with Disabilities Act after his Family and Medical Leave Act leave expired.

In a March 3, 2022, letter, the Florida Department of Corrections advised Mr. Parnell that he was being demoted effective March 18, 2022, from his position as Staff Development Training Coordinator to Correctional Officer with a salary decrease. The demotion was allegedly due to Mr. Parnell violating various Department regulations. Mr. Parnell denies the allegations against him and upon which the demotion was purportedly based.

On March 8, 2022, Mr. Parnell again requested an extended leave of absence from work. He provided a note from his medical provider supporting his request, claiming that he "need[ed] outpatient treatment since he was exhibiting symptoms of an emotional disorder that interferes with day-to-day functioning and [could not] alleviate these symptoms on his own." *Id.* at ¶ 27. The medical provider added that he needed "medication management and follow-up appointments until further notice." *Id.* That month, Mr. Parnell was diagnosed with major depressive disorder, anxiety disorder, and insomnia.

On March 23, 2022, Patricia Ann Linn, Human Resource Analyst, responded to Mr. Parnell's request for accommodation, informing him that his request for additional leave was granted through March 10, 2022. Mr. Parnell did not provide Defendant with a return-to-work date. On March 30, 2022, Jason Hoskins, Warden, sent a letter to Mr. Parnell requiring him to complete a "Release of Information" form and return it no later than April 13, 2022. In response,

Mr. Parnell authorized the release of medical information and completed the form on April 11, 2022.

On May 18, 2022, Defendant advised Mr. Parnell that he violated several rules because he had not returned to work after exhausting his medical leave and failed to provide a return-to-work date. This letter also explained that Defendant intended to terminate Mr. Parnell's employment and granted him the right to a predetermination hearing. Mr. Parnell never availed himself of such a hearing. Plaintiff's employment was eventually terminated on August 11, 2022, at which time he had 925 hours of sick leave available and accrued.

## II.   Procedural History

Mr. Parnell's Complaint brings claims against Defendant under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990. The six counts are as follows: Count I, discrimination based on race; Count II, discrimination based on color; Count III, retaliation for Mr. Parnell's filing an Equal Employment Opportunity Commission complaint; Count IV, disability discrimination – failure to accommodate; Count V, disability discrimination; and Count VI, retaliation for Mr. Parnell's request for a reasonable accommodation.

Defendant moved to dismiss Counts I, II, IV, and V of the Complaint for failure to state a claim upon which relief could be granted. The Court granted the motion. Defendant now moves for summary judgment on Counts III and VI.

## III.   Legal Standard

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Thus, the basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

5

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The non-movant must present more than a scintilla of evidence in support of the non-movant's position. A jury must be able reasonably to find for the non-movant. *Anderson*, 477 U.S. at 254.

"If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). However, the existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248 (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 587.

### IV.   Discussion

#### A.   Count III: Violation of the Civil Rights Act of 1964 (Retaliation)

In Count III, Mr. Parnell brings a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, against Defendant for retaliation. Title VII's anti-retaliation provision prohibits retaliation by an employer when an employee "oppos[es] any practice made an unlawful employment practice by [Title VII]," or participates in an Equal Employment Opportunity investigation or proceeding. 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Byrant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). If a plaintiff makes this showing, "the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the defendant carries this burden of production, "the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions." *Id.*

Defendant concedes that Mr. Parnell has met the first prong, engaging in a statutorily protected activity, as Mr. Parnell filed an Equal Employment Opportunity Commission Charge of Discrimination against Defendant. 42 U.S.C. § 2000e-2(a); § 2000e-3(a). Defendant further concedes that Mr. Parnell has met the second prong, as he was demoted and ultimately terminated. *See Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (holding that termination constitutes adverse action); *Howard v. Sunniland Corp.*, 281 F.Supp.3d 1253, 1257 (holding that demoting an employee constitutes adverse action). Thus, the parties only contest the third prong – causation.

*1. Causation*

Title VII retaliation claims require the plaintiff to prove that the "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). "Thus, to survive summary judgment, a plaintiff must show that the complained of adverse decision was because of his protected activity, and his employer would not have made the decision but for his engagement in that protected activity." *Fitzgibbon v. Fulton Cnty.*, 842 Fed.Appx. 385, 389 (11th Cir. 2021). A plaintiff can demonstrate causation "by

showing a 'very close' temporal proximity between the statutorily protected activity and the adverse action." *Id.* (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam)). However, "in a retaliation case, when an employer contemplates an adverse employment action *before* an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (emphasis added).

Defendant argues that because Mr. Parnell's demotion occurred almost four months after he filed his Equal Employment Opportunity Commission charge, the Court should not infer causation based on timing. Further, Defendant argues that regardless of the timing of events, the Court cannot rely on temporal proximity to establish causation because adverse employment action was contemplated before Mr. Parnell engaged in protected activity. Mr. Parnell, in response, argues that he participated in ongoing protected activity during the pendency of the Equal Employment Opportunity Commission investigation, which began when he filed his charge of discrimination in November 2021 and did not end until 2023, when the Commission issued its dismissal letters. Further, Mr. Parnell argues that adverse employment action could not have been contemplated before he engaged in protected activity as he was cleared via "not sustained" findings and that any overturning of these findings was illegitimate. Defendant responds that notwithstanding the initial outcome of the investigation, Defendant notified Mr. Parnell on July 16, 2021, October 7, 2021, and November 10, 2021—all prior to the initiation of his protected activity—that it intended to take adverse employment action against him in the form of a demotion.

Here, the Court finds that Mr. Parnell cannot rely on temporal proximity to show causation because Defendant contemplated adverse employment action before Mr. Parnell engaged in protected activity. Mr. Parnell initiated his protected activity on November 29, 2021, when he

8

participated in Equal Employment Opportunity Commission proceedings. While Mr. Parnell is correct that he was advised on May 20, 2021, that the investigation findings were "not sustained," Defendant nevertheless notified Mr. Parnell on several occasions that it was contemplating adverse employment action by way of demotion. On July 16, 2021, Defendant notified Mr. Parnell that it "intend[ed] to take disciplinary action against [him] in the form of a demotion." D.E. 42-3 at 1. Defendant did the same on October 7, 2021 and again on November 10, 2021. D.E. 42-7 at 1; D.E. 42-8 at 1. Mr. Parnell argues that because the adverse action was only contemplated, but not acted on, that Defendant's argument cannot stand. However, the standard articulated by the Eleventh Circuit only requires that the employer "contemplates an adverse employment action before an employee engages in protected activity." *Drago*, 453 F.3d at 1308. Here, the undisputed factual record reflects that Mr. Parnell's demotion was "already contemplated and in motion prior to his participation in [] protected activity." *Fitzgibbon*, 842 Fed.Appx. at 389. Thus, because Defendant contemplated demotion four months prior to Mr. Parnell engaged in protected activity, the subsequent adverse action "does not suffice to show causation," and Mr. Parnell cannot rely on temporal proximity. *Id.*

In his response in opposition to Defendant's motion, Mr. Parnell refutes Defendant's arguments above regarding timing. However, Mr. Parnell does not attempt to provide the Court with any other evidence that demonstrates that there is a causal link between the protected activity and the adverse employment action. Accordingly, the Court finds that Mr. Parnell has not established a prima facie case of retaliation under Title VII.

*2. Pretext*

Even assuming *arguendo* that Mr. Parnell established a prima facie case of discrimination, Defendant has articulated "legitimate, non-discriminatory reason[s] for the adverse employment

9

action." *Bryant*, 575 F.3d at 1308. Defendant articulated that Mr. Parnell violated several of Defendant's rules and policies, including Florida Department of Corrections rules and the Florida Administrative Code governing employee conduct. *See* ECF No. 42-3 at 1; ECF No. 42-7 at 1; ECF No. 42-8 at 1. Further, Defendant was excessively absent without the required authorization and failed to return to work after exhausting his medical leave. ECF No. 42-13; ECF No. 42-1, 60:22–24, 61:1–4; ECF No. 42-10 at 1. Further, Defendant points to the Supplemental Report to the original investigation that ultimately sustained the allegations against Mr. Parnell. Thus, the burden shifts to Mr. Parnell to demonstrate that these reasons were "merely [] pretext to mask discriminatory actions." *Bryant*, 575 F.3d at 1308.

In response, Mr. Parnell argues that he was cleared of any wrongdoing. Further he notes that at the time of termination, he had over 900 hours of sick leave remaining as a result of his having over 20 years of service and minimum utilization of sick leave during his employment, and that Defendant has a policy of allowing employees up to twelve months of unpaid leave due to medical reasons. Mr. Parnell also asserts that while he did not provide a return-to-work date, his physician's letter offered to answer any questions regarding his medical condition and that Mr. Parnell signed a medical release allowing Defendant to contact his treating physician. Finally, Mr. Parnell disputes the Supplemental Report because it was not issued within 180 days of Defendant first receiving notice of the allegations against Mr. Parnell, and because the Report is undated, unsigned, and thus does not indicate who or when the document was generated. The Court addresses each argument in turn.

As for the 900 hours of sick leave Mr. Parnell accrued, there is no policy that requires Defendant to allow employees who have 20 years of accrued sick leave to use those days before terminating them. Mr. Parnell does not dispute that he never provided a return-to-work date after

Defendant communicated at least four times with Mr. Parnell about the need for such a date. *See* ECF No. 42-17 at 1; ECF No. 42-18 at 1–2; ECF No. 42-14 at 1. Moreover, Mr. Parnell asserts that Defendant had chronic difficulty with staffing corrections officers, which further highlights how his absence affected Defendant's operations. ECF No. 46 ¶ 40.

With regard to the Supplemental Report, the Court finds that there is no genuine dispute of material fact as to its legitimacy. For factual issues to be "genuine," they must have a real basis in the record. *Matsushita*, 475 U.S. at 586. When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." *Id.* at 587.

Here, the Report itself indicates that it was dated September 29, 2021, and that it was generated by Chief Darryl Cherry. Further, Ms. Katouree Jackson, a law enforcement inspector supervisor for Defendant, indicated the same in her deposition. ECF No. 48-1, 37:12–22, 39:21-25, 40:1–24; ECF No. 42-5 at 1. Thus, there is no dispute that the allegations against Mr. Parnell were ultimately "sustained," and provided a legitimate, non-discriminatory reason for the adverse employment action taken against him. Further, the Court finds that Defendant complied with Florida Statute 112.532(6)(a) as Defendant completed the investigation "within 180 days after the date the agency receive[d] notice of the allegation," and gave "notice in writing to [Mr. Parnell] of its intent to proceed with disciplinary action." *Id.* The Supplemental Report was not in violation of the statute as the investigation and notice were completed before the 180-day deadline, and because the Report was a review of the completed investigation – not a reopening of the investigation nor the initiation of a further investigation outside of the deadline. *See* 48-1, 40:1–24. Accordingly, there is no genuine dispute as to the veracity of the Supplemental Report, and the Court considers it another legitimate reason for the adverse employment action taken against Mr. Parnell.

For the reasons stated above, the Court finds that Mr. Parnell's responses do not meet the high burden required to show pretext as he has not provided any evidence that "reveals such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Ind. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (internal quotation marks omitted). Further, Mr. Parnell has failed to show that there was a causal connection between his protected activity and any adverse employment actions and has not provided evidence creating a genuine dispute as to this issue. Thus, the Court grants summary judgment in favor of Defendant as to Count III. *See Hudson v. Blue Cross Blue Shield of Ala.*, 431 Fed.Appx. 868, 870 (11th Cir. 2011) (granting summary judgment for defendant where plaintiff failed to rebut evidence showing that plaintiff was terminated for legitimate, non-discriminatory reasons); *James v. City of Montgomery*, 823 Fed.Appx. 728, 735 (11th Cir. 2020) (granting summary judgment for defendant where plaintiff "did not produce evidence creating a genuine issue of material fact as to whether there was a causal connection between her statutorily protected activity and adverse employment actions").

B. **Count IV: Violation of the Civil Rights Act of 1964 (Disability Discrimination Retaliation)**

Mr. Parnell's Amended Complaint asserts a claim for retaliation based on his request for a reasonable accommodation under the Americans with Disabilities Act of 1990. The Act's anti-retaliation provision prohibits employers from discriminating against individuals who have "opposed any act or practice made unlawful by [the Act]" or "made a charge [or] participated in any manner in an investigation, proceeding, or hearing under [the Act]." 42 U.S.C. § 12203(a). Retaliation claims under the Act are analyzed using the same test described above for Title VII retaliation claims: (1) protected activity; (2) adverse employment action; and (3) causation. *See*

*Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (ADA retaliatory discharge claim at issue, but test based on Title VII). The burden-shifting framework that follows such a showing is likewise identical. *Id.* As with Count III, Defendant concedes that Mr. Parnell has met the first two prongs. The parties again solely dispute causation.

*1. Causation*

The Court's analysis as to timing above applies here. The undisputed factual record reflects that Mr. Parnell's demotion was "already contemplated and in motion prior to his participation in [] protected activity." *Fitzgibbon*, 842 Fed.Appx. at 389. Thus, because Defendant contemplated demotion four months prior to Mr. Parnell engaging in protected activity, the subsequent adverse action "does not suffice to show causation," and Mr. Parnell cannot rely on temporal proximity. *Id.* Further, just as above, Mr. Parnell does not attempt to provide the Court with any other evidence that demonstrates that there is a causal link between the protected activity and the adverse employment action. Accordingly, the Court finds that Mr. Parnell has not established a prima facie case of disability discrimination retaliation as he has not proven that his protected activity was the but-for cause of the adverse employment action taken against him.

*2. Pretext*

Again, even assuming *arguendo* that Mr. Parnell made a prima facie claim, Defendant has articulated "legitimate, non-discriminatory reason[s] for the adverse employment action." *Bryant*, 575 F.3d at 1308. Defendant highlights Mr. Parnell's excessive absences and violation of Florida Department of Corrections rules. While referring to the same reasons outlined above, Defendant also notes that after requesting accommodations, Mr. Parnell failed to comply with proper Americans with Disabilities Act procedures by refusing to provide a return-to-work date. After Defendant nevertheless provided additional sick leave to Mr. Parnell, he again failed to provide a

return-to-work date, and then failed to return to work after exhausting his medical leave. Defendant advised Mr. Parnell that it intended to terminate his employment and offered him a predetermination hearing. Mr. Parnell was, according to Defendant, ultimately terminated for these reasons, and those discussed above, including the supplemental report and the violation of other Florida Department of Corrections rules. The Court finds that these reasons are legitimate and non-discriminatory. The burden thus shifts to Mr. Parnell to demonstrate that these reasons were "merely [] pretext to mask discriminatory actions." *Bryant*, 575 F.3d at 1308.

Mr. Parnell, in response, argues that his failure to return from leave was not a violation of the Family and Medical Leave Act procedures because Defendant's policies allow for numerous other options to take additional medical leave beyond twelve weeks. Mr. Parnell reasserts that he had over 900 hours of sick leave remaining. Further, Mr. Parnell notes that while his physician failed to prove a return-to-work date, Defendant never contacted the physician nor did Defendant engage in any interactive process or conversation with Mr. Parnell regarding this issue. Finally, Mr. Parnell argues that his medical leave was authorized through the date of his termination, as he was on paid approved sick leave. The Court will address each argument in turn.

The Court is not persuaded by Mr. Parnell's argument that he was not in violation of any rules or statutory procedures. Mr. Parnell does not allege that he ever availed himself of or requested the benefits Defendant provides to employees regarding taking an excess of twelve weeks of leave. In any event, the Court cannot find that after failing to communicate a return-to-work date, it was Defendant's responsibility to allow Mr. Parnell to use his 20 years of accrued sick leave before terminating him.

Further, Mr. Parnell is incorrect when he claims Defendant never engaged in any interactive process or conversation with him regarding his failure to provide a return-to-work date.

Defendant communicated at least four times with Mr. Parnell himself about the need for a return-to-work date. ECF No. 42-17 at 1; ECF No. 42-18 at 1–2; ECF No. 42-14 at 1. What's more, Mr. Parnell admits that he never provided a return-to-work date, but seemingly argues that it was Defendant's responsibility to contact his medical provider to obtain such a date. Mr. Parnell provides no case law to support this assertion and the Court cannot find any to support such a claim. While the Court does not conclude that Mr. Parnell's absences were unjustified, it finds that Mr. Parnell has not shown that the reasons Defendant offers as to why he was demoted and terminated are untrue or of questionable credibility.

"Taking adverse employment action because of an employee's violation of a work rule or policy may be pretextual when the plaintiff proffers evidence '(1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated.'" *Hudson*, 431 Fed.Appx. at 869 (quoting *Damon v. Fleming Supermarkets of Fla.*, 196 F>3d 1354, 1363 (11th Cir. 1999)). Plaintiff has not presented any such evidence in this case.

Thus, for the reasons stated above, the Court finds that Mr. Parnell's responses do not meet the high burden required to show pretext as he has not provided any evidence that "reveals such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels*, 408 F.3d at 771 (internal quotation marks omitted). Accordingly, the Court grants summary judgment in favor of Defendant as to Count VI. *See Hudson*, 431 Fed.Appx. at 870 (granting summary judgment for defendant where plaintiff failed to rebut evidence showing that plaintiff was terminated for legitimate, non-discriminatory reasons); *James*, 823 Fed.Appx. at 735 (granting summary judgment for defendant where plaintiff "did not produce evidence creating

a genuine issue of material fact as to whether there was a causal connection between her statutorily protected activity and adverse employment actions").

## V. Conclusion

Defendant's Motion for Summary Judgment **(D.E. 42)** is **GRANTED**. All pending motions are **DENIED AS MOOT**. The Clerk is directed to close the case.

DONE AND ORDERED in Chambers at Miami, Florida, this 12th of March 2025.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record